# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| ANGELA F. PEEPLES,<br><br>          **Plaintiff,**<br><br>v.<br><br>KAISER PERMANENTE THE SOUTHEAST PERMANENTE MEDICAL GROUP,<br><br>          **Defendant.** | 1:15-cv-3029-WSD |

## OPINION AND ORDER

This matter is before the Court on Magistrate Judge John K. Larkins, III's Final Report and Recommendation [33] ("R&R"), recommending that Defendant Kaiser Permanente The Southeast Permanente Medical Group ("Defendant" or "TSPMG") Motion to Dismiss [29] be granted, and that this action be dismissed. Also before the Court are Plaintiff Angela F. Peeples' ("Plaintiff") Objections [35] to the R&R.

## I. BACKGROUND

### A. Facts

From November 2008 to early 2015, Plaintiff, who is African-American, worked as a nurse practitioner in the oncology department at Defendant's

Cumberland Medical Center ("CMC").  In December 2014, Defendant informed Plaintiff that her position would be eliminated "due to the closing of the [CMC's] Cumberland Infusion Center."  ([1.2] at 179).  Although Defendant "usually retains staff" during department closures, and Plaintiff applied for jobs at TSPMG's Cobb Clinic and neurology department, Defendant did not offer Plaintiff a position in another department or clinic.  ([25] at 5-6).[1]  Plaintiff alleges that "all African American staff [were] laid off" but that Defendant did not lay off two white employees, a nurse and a pharmacist, who both worked in the "Cumberland office."  ([25] at 4-5).

Plaintiff alleges she was terminated "after reporting unethical concerns . . . concerning [herself], staff, and patients," including "harassment," "sabotage," "cliques," and "negative comments" about her.  ([25] at 2, 4).  This appears to include one instance in which a TSPMG employee wrongly told a patient that Plaintiff never informed the employee of the patient's visit.  ([25] at 4).  Plaintiff also alleges Defendant failed to provide her with a letter of

---

[1]  In January 2015, an employee at Defendant's Cobb County Employee Wellness Center and Clinic referred Plaintiff to a TSPMG senior recruiter, stating that Plaintiff "would be a good fit" for the Cobb County clinic.  Plaintiff had a telephone interview with the recruiter but was not offered a position.  ([25] at 5-6, 15-16).

2

recommendation when she was laid off, and did not offer her a "job coach" to help her transition to a new job. ([25] at 6).

Plaintiff claims she was subject to three racist remarks from coworkers at TSPMG. First, during a tuberculosis training session, a pharmacist remarked, while laughing, that a group of staff members "look[ed] like a bunch of KKK." ([1.2] at 117). Second, Plaintiff's supervisor, Dr. Hamrick, referred to a newly-hired program coordinator, who is white, as the "new face of oncology." ([1.2] at 105).[2] Third, when Plaintiff asked a nurse if she ate collard greens, the nurse said that she did and stated "we have slaves in Brazil." ([1.2] at 127). When Plaintiff later asked the nurse to explain her comment, the nurse said "she did not finish her story" and that Plaintiff was "blowing things totally out of proportion." ([1.2] at 127).

Plaintiff claims that, on April 9, 2014, she informed Defendant that she has attention deficient hyperactivity disorder ("ADHD"). ([25] at 5-9). Plaintiff states that her ADHD adversely affected her work, and that Defendant "failed to offer [her] support." ([25] at 5). Plaintiff states that Dr. Hamrick believed she was

---

[2] Plaintiff states: "I feel that [physicians] are a clique of friends that have decided to come together to plan my demise without any plans to help me only to kill and destroy me so that I will be replaced with what Dr. Hamrick calls a new face of oncology (Caucasian like [the new program coordinator])." ([1.2] at 103).

3

depressed, recommended that she see a TSPMG behavioral health doctor, and subjected her to "putdowns" about her "mental status." ([25] at 2).

B. <u>Procedural History</u>

On August 27, 2015, Plaintiff filed her Application for Leave to Proceed *in Forma Pauperis* [1] ("IFP Application"). On September 29, 2015, the Magistrate Judge granted Plaintiff's IFP Application and allowed Plaintiff's *pro se* Complaint [5] to proceed. ([4]). On April 18, 2016, Plaintiff filed her Amended Complaint [23], asserting claims, under the Americans with Disabilities Act of 1990 ("ADA") and Title VII of the Civil Rights Act of 1964 ("Title VII"), for disability discrimination, race discrimination, a hostile work environment, and retaliation. ([25] at 4; [1.1] at 1-2).

On September 2, 2016, Defendant filed its Motion to Dismiss. Plaintiff did not file a response, and the motion is thus deemed unopposed. <u>See</u> LR 7.1(B), NDGa. On December 14, 2016, the Magistrate Judge issued his R&R, recommending that Defendant's Motion to Dismiss be granted, that Plaintiff's ADA claims be dismissed without prejudice as unexhausted, and that Plaintiff's remaining claims be dismissed with prejudice for failure to state a claim. On December 27, 2016, Plaintiff filed her Objections to the R&R. On January 10, 2017, Defendant filed its response to Plaintiff's Objections, arguing

that the objections should be disregarded because they are (i) "nonspecific, unsupported and conclusory" and (ii) assert factual allegations not included in Plaintiff's Amended Complaint. ([36] at 2-3).

## II. DISCUSSION

### A. Legal Standard

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). With respect to those findings and recommendations to which objections have not been asserted, the Court must conduct a plain error review of the record. United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983), cert. denied, 464 U.S. 1050 (1984).

"In order to challenge the findings and recommendations of the magistrate judge, a party must file written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." Macort v. Prem, Inc., 208 F. App'x 781, 783

(11th Cir. 2006). "It is critical that the objection be sufficiently specific and not a general objection to the report." Id. Plaintiff's objections include 261 pages of attachments, assert new factual allegations, and provide a general narrative of events without specifically tethering the events to her claims for relief or otherwise explaining which of, and why, the Magistrate Judge's conclusions are incorrect. The Court reviews the R&R for plain error because Plaintiff's objections are "[f]rivolous, conclusive, or general," and do not "specifically identify those findings objected to" or the basis of the objections. Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988).[3]

B. Analysis

1. ADA Claims for Disability Discrimination

"Before filing suit under the ADA, a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC." Butler v. Greif, Inc.,

---

[3] The Court also disregards factual assertions in Plaintiff's Objections that were not properly included in her Amended Complaint. See Pinkard v. Wal-Mart Stores, Inc., No. 3:12-CV-02902-CLS, 2012 WL 5511039, at *2 n.17 (N.D. Ala. Nov. 9, 2012) ("[F]or purposes of a motion to dismiss the court must consider only the contents of the complaint."); see also Shultz v. Sec'y of U.S. Air Force, 522 F. App'x 503, 506 (11th Cir. 2013) ("To require a district court to consider evidence not previously presented to the magistrate judge would effectively nullify the magistrate judge's consideration of the matter and would not help to relieve the workload of the district court.").

325 F. App'x 748, 749 (11th Cir. 2009).[4] The Eleventh Circuit "has noted that judicial claims are allowed if they amplify, clarify, or more clearly focus the allegations in the EEOC complaint, but has cautioned that allegations of new acts of discrimination are inappropriate." Gregory v. Georgia Dep't of Human Res., 355 F.3d 1277, 1279-80 (11th Cir. 2004).

On May 20, 2015, Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). ([29.2]). She checked the boxes for discrimination based on "race" and "retaliation," but did not check the box for "disability" discrimination. ([29.2]). Plaintiff made the following allegations in her EEOC charge:

> I began working for [TSPMG] on or about November 3, 2008, as a Nurse Practitioner. In 2013, I was subjected to racially harassing comments. I have also been subjected to racially harassing attitudes. In August 2014, I complained to Angela Pilcher, Human Resources Representative, regarding the comments and attitudes. In December 2014, I was told I would be laid-off.
>
> Ms. Pilcher stated that I was laid-off due to the closing of the department.

---

[4] Because Title VII does not protect employees from discrimination on the basis of disability, Plaintiff's disability discrimination claims arise only under the ADA. O'Donnell v. Punta Gorda HMA, LLC, No. 2:10-cv-785, 2011 WL 3168144, at *2 n.1 (M.D. Fla. July 27, 2011); Clifton v. Georgia Merit Sys., 478 F. Supp. 2d 1356, 1361 (N.D. Ga. 2007).

7

> I believe I have been discriminated against because of my race (African-American) and retaliated against for participating in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

([29.2]).

The Magistrate Judge found that Plaintiff's disability discrimination claims are unexhausted because "[n]othing in [Plaintiff's] EEOC charge indicates that she believed that she had been subjected to discrimination on the basis of a disability or even suggests that she had a disability." (R&R at 15). The Court finds no plain error in this conclusion, and Plaintiff's ADA claims are dismissed without prejudice. See, e.g., Sessom v. Wellstar Hosp., No. 1:08-cv-2057, 2009 WL 1562876, at *3 (N.D. Ga. May 29, 2009) (dismissing a disability discrimination claim as unexhausted "[b]ecause Plaintiff's [EEOC] charge does not reference discrimination on the basis of disability and clearly excludes it as a basis when she did not check the box indicating that her charge was based on disability discrimination").

  2. <u>Title VII Claim for Race Discrimination based on Disparate Treatment</u>

"Title VII provides that it is unlawful for an employer to discriminate against an employee because of the employee's race. To state a race-discrimination claim under Title VII, a complaint need only provide enough

8

factual matter (taken as true) to suggest intentional race discrimination." Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245-46 (11th Cir. 2015) (internal quotation marks and citations omitted).

Plaintiff alleges that "all African American staff [were] laid off" but that Defendant did not lay off two white employees, a nurse and a pharmacist, both employed in the "Cumberland office." ([25] at 4-5). The Magistrate Judge found that Plaintiff failed to show the two white employees were proper comparators, including because they held different jobs and Plaintiff did not allege they worked in the oncology department or the Infusion Center where Plaintiff worked. (R&R at 18); see Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004) (explaining that a comparator must be "nearly identical" to the plaintiff to prevent courts from second-guessing employment decisions). The Magistrate Judge found that Plaintiff "provided no factual context that might tend to show that TSPMG's African-American employees were targeted for layoffs because of their race," and that Plaintiff's "statement that all African-American staff were laid off is too vague to state a race discrimination claim based on disparate treatment." (R&R at 20). The Court finds no plain error in these conclusions, and Plaintiff's race discrimination claim, based on disparate treatment, is dismissed with prejudice.

### 3. Title VII Claim for Racially Hostile Work Environment

"When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). "To evaluate the objective severity of the alleged harassment, [courts] look to: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Lara v. Raytheon Tech. Serv. Co., LLC, 476 F. App'x 218, 221 (11th Cir. 2012). "[R]acial slurs allegedly spoken by co-workers [must] be so commonplace, overt and denigrating that they created an atmosphere charged with racial hostility." Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1521 (11th Cir. 1995). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (internal citation and quotation marks omitted).

Plaintiff claims she suffered a racially hostile work environment because (1) a pharmacist remarked, while laughing, that a group of staff members "look[ed]

like a bunch of KKK," (2) a nurse, in responding to Plaintiff's question about collard greens, said "we have slaves in Brazil," and (3) Plaintiff's supervisor, Dr. Hamrick, referred to a newly-hired program coordinator, who is white, as the "new face of oncology." ([1.2] at 105, 117, 127; [25] at 5). The Magistrate Judge found that these three remarks do not show Plaintiff was subject to a hostile work environment, including because "[t]here is no plausible inference that th[e] isolated [comments] were so commonplace, overt, and denigrating that they created an atmosphere charged with racial hostility." (R&R at 23-24). The Court finds no plain error in this determination, and Plaintiff's racially hostile work environment claim is dismissed with prejudice. See Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d 1227, 1234 (11th Cir. 2006) ("Title VII is neither a general civility code nor a statute making actionable the ordinary tribulations of the working place."); Austin v. City of Montgomery, 196 F. App'x 747, 752 (11th Cir. 2006) (concluding that defendant's racial comments "were not frequent or severe enough to constitute a hostile work environment," and that nothing in the record indicated the comments "were meant to harass [plaintiff] because of her race"); Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276-77 (11th Cir. 2002) ("Title VII is only implicated in the case of a workplace that is 'permeated with discriminatory intimidation, ridicule and insult,' not where there is the 'mere

11

utterance of an epithet.'" (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993))); McCollum v. Bolger, 794 F.2d 602, 610 (11th Cir. 1986) (emphasizing that Title VII "is not a shield against harsh treatment at the work place" and does not prohibit "personal animosity" or "personal feud[s]").

      4.     Title VII Claim for Retaliation

"Title VII prohibits discrimination based on an employee's opposition to an unlawful employment practice or participation in an investigation of an unlawful employment practice." Palmer v. McDonald, 624 F. App'x 699, 702 (11th Cir. 2015). "A plaintiff must allege that (1) he engaged in statutorily protected activity, (2) he suffered a materially adverse employment action, and (3) a causal relationship between the two events exists." Id.

Plaintiff alleges she was terminated "after reporting unethical concerns . . . concerning [herself], staff, and patients," including "harassment," "sabotage," "cliques," and "negative comments" about her. ([25] at 2, 4). Plaintiff's Amended Complaint does not provide specific information about the "unethical concerns" she reported. The Magistrate Judge found that Plaintiff fails to state a Title VII retaliation claim because her "allegation that she reported ethics problems and her general assertion that she reported harassment and 'negative comments' in her department is not sufficient to allow the Court to infer that she

opposed an unlawful employment practice, namely, race discrimination." (R&R at 26). The Court finds no plain error in this determination. Cf. Hopkins v. Saint Lucie Cty. Sch. Bd., 399 F. App'x 563, 566-67 (11th Cir. 2010) (dismissing a Title VII retaliation claim because plaintiff "does not allege sufficient facts to establish that he was engaged in a statutorily protected form of expression").[5] Plaintiff's Amended Complaint fails to adequately allege that she engaged in statutorily protected activity or that that her allegedly protected activity caused a materially adverse employment action. Plaintiff's Title VII retaliation claim is dismissed with prejudice.[6,7]

---

[5] The Magistrate Judge found that, even if the "unethical concerns" involved the three allegedly related racist remarks to which she was subject at work, "reporting a handful of comments over the course of several years could [not] constitute opposition to an unlawful practice of her employer." (R&R at 27-28). The Court finds no plain error in this conclusion.

[6] The Magistrate Judge found that, to the extent Plaintiff also asserts that Defendant violated the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), she fails to state a claim on which relief may be granted. (R&R at 29-30). The Court finds no plain error in this determination, and Plaintiff's COBRA claims are dismissed with prejudice.

[7] The Court would reach the same conclusions expressed in this Order even if Plaintiff had filed proper objections and the Court conducted a *de novo* review. This action is required to be dismissed for lack of exhaustion and for failure to state a claim.

13

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Magistrate Judge John K. Larkins, III's Final Report and Recommendation [33] is **ADOPTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Objections [35] are **OVERULLED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss [29] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's ADA claims are **DISMISSED WITHOUT PREJUDICE** as unexhausted, and that Plaintiff's remaining claims are **DISMISSED WITH PREJUDICE** for failure to state a claim.

**SO ORDERED** this 2nd day of May, 2017.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE